## McKEE v. ENGLISH.

### Opinion delivered February 21, 1921.

1.  HIGHWAYS—POWER TO CREATE SEPARATE DISTRICTS BY ONE STATUTE.—It was competent for the Legislature by one statute to create three separate road districts in one county.

2.  STATUTES—CONSTRUCTION OF AMENDATORY AND REPEALING ACT.—Where the Legislature, in amending a statute, adopted the form of rewriting the sections amended and repealing the original sections, it can not be contended that the Legislature intended to repeal the sections as amended.

3.  STATUTES—SPECIAL SESSION OF LEGISLATURE—GOVERNOR'S CALL.—Where the Governor called an extraordinary session of the Legislature for "ratifying, confirming and validating special or local improvement districts," etc., a statute attempting to cure irregularities in proceedings for the formation of certain road improvement districts was authorized.

4. Highways—invasion of county court's jurisdiction.—2 Road Acts 1919, p. 2034, creating a road improvement district, as amended by acts extraordinary session 1920, No. 520, § 6, subjecting the district to the general supervision and control of the county court, *held* not void as invading the jurisdiction of such court.

5. Highways—assessments—limitation to attack.—Landowners in a road improvement district can not attack as invalid for failure to assess telephone lines in the district where they have not brought action for that purpose within the time expressed in the statute creating the district.

6. Highways—limit of assessments.—Where the assessments of the road tax on lands within a specail road improvement district is within the 30 per cent. maximum fixed by the statute creating the district, it is immaterial that the benefits are appraised at a sum in excess of that amount.

7. Highways—effect of excessive assessment.—If an assessment of road tax exceeds the maximum prescribed by a statute, it would not avoid the whole assessment, but would merely result in a proportionate reduction down to the maximum prescribed by the statute.

Appeal from Washington Chancery Court; *B. F. McMahan,* Chancellor; affirmed.

*E. P. Watson,* for appellants.

1. Act 529, Acts 1919, named three persons as commissioners for each of the three districts. The curative act did not amend this act by declaring that three commissioners should constitute the board in the future of district No. 3. The court erred in holding the curative act constitutional and the organization of district No. 3 valid.

2. The contracts for building the roads in district No. 3 were illegally entered into by this pretended board of commissioners. No legal notice was given, and all advertisements for bids were without authority of law. Full thirty days' notice is required, and time is essential in such matters. Page & Jones on Assessments, § 777-821, act 527, Acts 1919, p. 2048, § 9.

3. The district is laid off without regard to benefits to a large portion of the district. It is arbitrary and unjust. The act is unconstitutional, arbitrary and unjust.

4. Section 7 of this amendatory act expressly repeals sections 6, 8 and 27 of the original act No. 529. Black on Construction of Laws, §§ 130-1. If an act be passed subsequent to the amendatory act repealing the original act, the amendment incorporated in the original act is repealed. 21 Mo. App. 587; 73 Mo. 88; 22 Tex. 588; 90 Mo. St. 627; 36 Ill. 162. By repealing sections 6 and 8 of the original act the heart of it was cut out, and the entire act became inoperative.

5. But, if not repealed, sections 6, 8 and 27 are in full force, and the assessments are invalid, as property required to be assessed was left off the assessment rolls and the assessments are discriminatory and void. Page & Jones on Assessments, §§ 880-4; *Ib.*, §§ 639 to 645.

6. Under the original act creating district No. 3, the assessors were not limited as to the amount of benefits; the amendatory act, § 8, limits the assessment to 30 per cent. of the assessed value, and it is a legislative determination of benefits. Page & Jones on Assessments, §§ 668 and 728, p. 1263. See, also, § 777. A failure to object to an assessment which is void is not a waiver of such defense. Page & Jones, § 918; 34 Pac. Rep. 691. The statute is void, and the assessments exceed the maximum limit provided by statute and laying out the road is arbitrary and void.

*Hill & Fitzhugh,* for appellees.

1. The act provides for only three commissioners. Even if nine commissioners had been appointed by the original act, and the district had acted through three commissioners, their acts would be validated by the act February 23, 1920, which ratifies and confirms all acts, proceedings and contracts of the commissioners. Section 5, act February 23, 1920; 134 Ark. 30.

2. More than thirty days' notice was given of the letting of the contracts, and all irregularities were cured by the amendatory act. 134 Ark. 30.

3. The roads were not laid off in an arbitrary manner. Authorities need not be cited as they are numerous.

4.   There was no unconstitutional interference with the jurisdiction of the county court. Both the original and amended acts fully recognize the jurisdiction of the county court. 130 Ark. 507; 125 *Id.* 375; 137 *Id.* 362.

5.   The amended act does not repeal itself.

6.   Failure to assess telephone and telegraph lines in the district does not render void the assessment on the balance of the property. The presumption is that the assessors did their duty, and the burden of proof was on appellants and they have failed to meet it, and (2) the presumption is that if these companies owned any real property that the same would have been assessed if they were benefited. 83 N. W. 183; 1 Page & Jones on Assessments, § 593.

7.   Benefits in excess of 30 per cent. have not been levied as the proof shows.

8.   All prior defects and irregularities were cured by the amendatory act of February 23, 1920.

9.   Plaintiffs are barred by limitation, as the suit was not brought until after the twenty days' limit had expired.

McCulloch, C. J.  Appellant owns real estate situate within the boundaries of Road Improvement District No. 3 of Washington County, an improvement district which was created by special act of the General Assembly of 1919, at the regular session (Vol. 2, Road Acts, 1919, p. 2034), and they instituted this action against the board of commissioners of said district attacking the validity of the statute, as well as certain proceedings of the board of commissioners.

The statute in question created three separate and distinct road improvement districts in Washington County numbered, respectively, 3, 4 and 5, and named three commissioners for each district, described the separate improvements to be constructed in each district and authorized the construction of the same and the assessment of benefits and levy of assessments, issuance of bonds, etc.

It was competent for the Legislature to adopt this form of creating by one statute numerous separate and distinct districts. *Cumnock* v. *Alexander,* 139 Ark. 153; *White* v. *Ark. & Mo. Highway Dist., ante* p. 160. This statute does not in express terms declare that each of the districts shall be separate and distinct, but such is the necessary effect of the language used in conferring authority on the commissioners to proceed with the construction of the improvements.

There was an amendatory statute enacted at the extraordinary session of the General Asesmbly in February, 1920 (unpublished act No. 529), which attempted to cure irregularities in the proceedings and also amended sections six, eight and twenty-seven in the original statute. The form adopted was to rewrite those sections anew, and the old sections were repealed. It is contended that the amendatory statute repealed itself as well as the three sections mentioned in the original statute. The statement of the argument affords the best answer, for we can not assume that the lawmakers intended to do the absurd thing of expressly re-enacting certain sections with the intention at the same time to repeal them. What was clearly meant was to repeal the old sections as originally written and to substitute the new sections as rewritten.

It is also contended that the amendatory statute is void for the reason that such legislation was not embraced within the call of the Governor in convening the General Assembly in extraordinary session. If it be conceded that we are at liberty to go behind the action of the Legislature for the purpose of determining whether or not the statute in question fell within the scope of the call of the Executive, we find by examination of the Governor's proclamation that it was sufficiently broad in its language to cover this statute. The purposes of the call, among other things, was for "ratifying, confirming and validating special or local improvement districts, organized under general laws or special or local laws, and enlarging the powers thereof."

It is next contended that the statute is void because the authority to construct the improvement .constituted an invasion of the jurisdiction of the county court. Section 6 of the section as amended contained the following provision: "Subject only to the general supervision and control of the county court of Washington County, Arkansas, as provided by the Constitution of said State, said boards of commissioners shall have exclusive jurisdiction over the construction and maintenance of the improvement herein provided for."

We think that the language of this particular statute constitutes much stronger recognition of the jurisdiction of the county court and affords less ground for holding that it is an invasion of the jurisdiction of that court than does the statute under consideration in other cases where we held that there was no such invasion. *Sallee v. Dalton,* 138 Ark. 549; *Cumnock v. Alexander, supra; Reitzammer v. Desha Road Imp. Dist.,* 139 Ark. 168; *McClelland v. Pittman,* 139 Ark. 341; *Bush v. Delta Road Imp. Dist.,* 141 Ark. 247.

This statute declares in express terms that the authority of the commissioners over the construction and maintenance of the improvements shall be subject to the jurisdiction of the county court. That is to say, that the county court shall .have the supervision and control of the action of the commissioners. We can scarcely see how the authority of the county court could be more emphatically expressed.

The proceedings of the board of commissioners are attacked in several particulars, some of which are barred by the period of limitation provided in the statute for bringing suit to invalidate the assessment of benefits. It is contended that the assessments are invalid because of the failure to assess telephone lines in the district. It is not alleged in the complaint that the telephone companies owned property in the district subject to assessment. There is an allegation that there are telephone lines in the district, but it does not allege that they constitute property of the character which is subject to assessment. However, this is a matter of which appellants are barred

by the failure to bring an action within the time expressed in the statute.

There is also an attack on the validity of the assessments on the ground that they exceed the maximum limit provided in the statute. The statute provides that the ''entire assessments levied upon the property of the districts for the construction and completion of the improvements herein provided for shall not exceed 30 per cent. of the assessed valuation of the real property within the districts according to last assessment for taxation, exclusive of interest on bonds, and overhead or contingent expenses.''

It is neither alleged nor proved that the commissioners are about to levy assessments in excess of the maximum limit prescribed by the statute. According to the undisputed evidence, the valuation of the real property in the district for general taxation purposes aggregates $1,852,566, and $539,000 is the contract price for the cost of construction of the improvements. This is within the limit of thirty per centum prescribed by the statute. It is true that the assessors have appraised the benefits in excess of this amount, but the thing prohibited by the statute is the levying of assessments in excess of the prescribed maximum—that is to say, the imposition of a tax in excess of that per centum. There is a difference between the appraisement of benefits and the levy of assessments, and the fact that the benefits are appraised in excess of the prescribed maximum does not affect the validity of the assessments if there is no levy in excess of the statutory maximum. Moreover, if it be conceded that the assessment of benefits exceeded the maximum, it would not avoid the whole assessment, but would merely result in a proportionate reduction down to the maximum prescribed in the statute.

It is also contended that laying out the road to be improved as prescribed in the statute is arbitrary, and that this renders the statute void, but this constituted a legislative determination as to the feasibility of the prescribed route of the road or laterals, and there is no

showing in the pleadings or proof that this determination was arbitrary and unreasonable.

Lastly, it is contended that the contract for the construction of the improvement was void for the reason that notice was not published for thirty days as provided by the original statute. It does not satisfactorily appear from the record that the notice was not published for a sufficient length of time before the letting of the contract; but, even if such were true, that is one of the irregularities which was cured by the amendatory statute.

Our conclusion is that none of the attacks upon the validity of the statute or the proceedings thereunder is well founded, and the decree of the chancery court is therefore affirmed.

HART, J. (dissenting). There is no use in threshing over old straw, and while it must be admitted that there is a far cry from *Road Improvement District No. 1* v. *Glover*, 89 Ark. 513, where it was held that the county court might form improvement districts in parts of the county for the purpose of improving the public roads and then taking over the roads to be maintained as part of the highway system of the county, to *Dickinson* v. *Reeder*, 143 Ark. 228, where it was held that a statute authorizing the perpetual continuance of the board of commissioners for the purpose of repairing and maintaining the road after its improvement was not violative of the Constitution, and other cases holding valid statutes providing for the organization of the whole county in separate improvement districts and the inclusion of the same land in several districts. Judge WOOD and myself think that the present case is another attempt by the Legislature to wrest from the county courts the jurisdiction over roads conferred upon them by our Constitution.

The statute under consideration provides that, subject only to the general supervision and control of the county court, as provided by the Constitution, the board of commissioners shall have exclusive jurisdiction over

the construction and maintenance of the improved road. The use of the words, "exclusive jurisdiction," conferred upon the commissioners was an evident attempt to arrest any active participation by the county court in the matter. By the use of the words, "general supervision and control of the county court," the Legislature evidently intended to define what the framers of the Constitution meant by giving the county courts exclusive original jurisdiction in all matters relating to roads, bridges, etc., in section 28, article 7 of the Constitution of 1874. This is shown, not only by the language used in the section just referred to, but in the other sections of the act.

Other sections of the act confer upon the commissioners power to make the improvements, to levy assessments for the construction of the same, and also to levy assessments for the maintenance of the roads after the improvements are finished. To give the commissioners exclusive jurisdiction over the construction and maintenance of the improvements, subject only to the general supervision of the county court, as provided by the Constitution, is an attempt on the part of the Legislature to take away from the county court all its jurisdiction except to approve the action of the commissioners, and, in exercising its power of approval or supervision, the county court could only say, "Well done, thou good and faithful servant," regardless of its better judgment. If the commissioners can exercise exclusive jurisdiction to construct and maintain the road, what is left for the county court to supervise?

The framers of the Constitution did not confer upon the county courts power to supervise the action of other tribunals in all matters relating to roads, but it conferred exclusive jurisdiction in the county courts in all matters relating to roads. They evidently meant by the exercise of jurisdiction that the county court should act in the matter, and did not intend that exclusive jurisdiction to act should be given to another body or tribunal, and that the mere supervision over that body should be left to the

county court. There is a marked difference between jurisdiction over a matter and supervision over the same matter. Jurisdiction confers the power to act, and supervision the power to inspect or approve merely. The difference is vital.

Where the county courts have exclusive jurisdiction in matters relating to roads, the public roads of a county would be laid out, vacated, improved and maintained by one tribunal. The whole system would be under one head. That the people understood this to be the meaning of the Constitution is shown by them adopting an amendment to the Constitution giving the county courts of the State, together with the majority of the justices of the peace, in addition to the amount of county taxes allowed to be levied, the power to levy not exceeding three mills on a dollar on all taxable property to be known as the county road tax and to be used for the purpose of making and repairing public roads and bridges.

A county road is devoted to the public use and may be used by the general public as well as by the adjacent landowners. Indeed, it is a matter of common knowledge that roads are used for the purpose of hauling freight by persons who own no land, and that such use is more injurious to the roads than the use of them by the landowners in carrying their products to the nearest market town. Hence the necessity of placing the jurisdiction over all matters relating to roads in one body or tribunal, to the end that the public interest should be best served, is apparent.

The evils of placing the jurisdiction over public roads in different tribunals or bodies are manifest. Interested parties may organize road improvement districts and impose the expense thereof upon the adjoining landowners. It is comparatively easy to organize such improvement districts ostensibly for the special benefits to be derived by the landholders from the enhanced value to their lands, when in reality the purpose of the organization is for the gain of the promoters, and the local taxes

imposed, in many instances, amount to practical confiscation of the landowners' property. To illustrate: A promoter may organize a road improvement district and put lands in it situated miles away from the road, knowing that the traffic from the lands will never go over the road, and a special tax is thus levied upon the lands upon the theory that the lands will be ultimately enhanced in value by the proposed improvement. Again and again the same lands may be placed in road improvement districts where the roads are miles away from the lands and do not afford any passageway to and from them to the lands. The sum total of these special taxes will eventually amount to so much that they will be very burdensome.

It will be remembered that each improvement district may be organized by different people, and that no regard for the relation between the proposed improvement will be considered. Even if they were considered and projected at the same time, the divergent views of honest promoters and the selfish views of dishonest ones would place local taxes upon the lands which would be very burdensome to the owners.

Finally it may come to pass that the road next to the landowner's farm, and which he uses to market his produce, will be made the subject of an improvement district. By that time the owner has reached almost the limit of his endurance in paying the special taxes; and, as the improvements may all be separate improvements, there is no provision for adjusting the assessments between the several separate districts and the landowners. Indeed, vested rights have sprung up in the meantime which would prevent this. Therefore, the landowner of small means must of necessity sacrifice his land and move away to another place where the taxes are less burdensome. Of course, it is well settled in law that a local improvement is one that shall benefit the property on which the cost is assessed in a manner local in its nature, and that such assessments should be limited to the amount of ben-

efits received. The question of benefits has been construed to be so much a matter of opinion that a local improvement system of constructing, improving and maintaining roads in this State has proved exceedingly burdensome to property owners and in numerous instances has reached a point well nigh to confiscation. In such cases the property is sold to pay special taxes and will be purchased by speculators at a price which amounts to no more than the special taxes imposed and the costs and penalties which have accrued. As has been said by an eminent judge, ''The victim of this vicious system of taxation will be left houseless and homeless, with the miserable consolation that, although without home or shelter, he is rich in supposed benefits, which never were and never could have been reasonably expected to be realized.''

Our present Constitution was written at a time when extravagant taxation was prevalent in the State, and doubtless the framers of it had in mind to prevent a system so readily open to abuses when they declared that the county courts should have exclusive original jurisdiction in all matters relating to roads. This was an express and unequivocal mandate of the people that only one tribunal should exercise jurisdiction over the public roads. It was not intended that other bodies with divergent minds should actively exercise the jurisdiction, and that the county courts should only have supervision over their actions.

The present system has destroyed the freedom of action guaranteed the county courts under the Constitution. The whole system is opposed to every principle of equitable apportionment of taxes and has been well said in many instances ''to be arbitrary exaction in its most odious form.''

Therefore we respectfully dissent.