ROAD IMPROVEMENT DISTRICT No. 16 *v.* SALE.

Opinion delivered July 10, 1922.

1. STATUTES—PRESUMPTION OF REGULARITY.—That one page of an enrolled bill for an act was in different typewriting and on a different kind of paper from that of the other pages of the bill does not overcome the presumption of the regularity of its introduction and passage.

2. STATUTES—PRESUMPTION OF REGULARITY.—An enrolled statute, signed by the Governor and deposited with the Secretary of State, raises the presumption that every requirement was complied with, and this presumption is conclusive unless the records of which the courts can take judicial knowledge show to the contrary.

2. EVIDENCE—JUDICIAL NOTICE.—The courts take judicial notice of the records of the General Assembly.

3. STATUTES—IMMATERIAL ALTERATION OF BILL.—The substitution of the word "embrace" for "abolish," in an act entitled "An act to embrace Road Improvement District No. 2 of the Northern District of Woodruff County in, and to create, Road Improvement District No. 16 of Woodruff County," after the bill was passed by the Senate and before it was passed by the House, did not affect its validity, since the real object of the act was to abolish District No. 2 and embrace it in District No. 16.

4. STATUTES—SPECIAL SESSION OF LEGISLATURE—SCOPE OF PROCLAMATION.—The act of Special Session of 1920 entitled "An act to embrace Road Improvement District No. 2 of the Northern District of Woodruff County in and to create Road Improvement District

No. 16 of Woodruff County, and for other purposes," was within the terms of the Governor's proclamation calling the session "for the purpose of enacting laws establishing special or local road improvement districts.

5.   EVIDENCE—PAROL EVIDENCE AS TO NOTICE OF SPECIAL BILLS.—Extrinsic evidence outside of the legislative records is inadmissible to show that the notice of the introduction of a special bill had not been published for the requisite length of time.

Appeal from Woodruff Chancery Court, Northern District; *J. E. Martineau,* Chancellor; reversed.

*H. M. Woods, Roy D. Campbell* and *Coleman, Robinson & House,* for appellants.

The finding by the court that the title to the act had been changed by substituting the word "embrace" for the word "abolish," and was a material variation in the bill, was not justified by the record. 44 Ark. 549; 110 Ark. 273; 34 Ark. 283; 40 Ark. 200.

In concurring in amendments, the Constitution does not require that it shall be done by yea and nay vote, and that the same shall be entered upon the journal. 61 Ark. 226.

Before a bill, which has been duly enrolled, shall be declared invalid, the record must show conclusively that the constitutional requirements have not been met. 43 W. V. 523; 64 Am. St. Rep. 878; 26 Kan. 723; 139 Ark. 598.

In determining whether an act has been properly passed, the court will not look beyond the records of the General Assembly. 72 Ark. 565; 40 Ark. 200; 131 Ark. 291; 139 Ark. 227.

While the title of an act may be looked to to ascertain its meaning, it is no part of the act and is not controlling in its construction. 124 Ark. 476; 130 Ark. 505.

While the journals furnish evidence of legislative proceedings so far as they go, yet courts are not bound by what appears therein. 40 Ark. 215.

It is not necessary that the vote on amendments be recorded.  Const. 1874; 61 Ark. 230; 130 Ark. 276; 61 Ark. 227; 110 Ark. 269; 4 Neb. 503; 11 Ind. 424.

·R. M. Hutchins and Mehaffy, Donham & Mehaffy, for appellees.

The constitutional provision limiting the scope of legislation at special sessions is mandatory, and any law enacted not embraced within the Executive's call is void. Jones v. State, 25 R. C. L. 806; Lewis, Sutherland, Statutory Construction, 2nd ed. sec. 65, p. 11.

The Legislature cannot indirectly do that which it is prohibited from doing directly.  5 Ark. 412.

The act does not fall within the range of the subjects submitted by the Governor in his proclamation.  19 S. W. 530.  The approval of the act by the Governor could not make it valid.  110 Mo. 286; 58 Tex. Cr. R. 209.

The duty having been placed on the Governor to specifically name the legislation in which the General Assembly was engaged when called together in special session, that duty can alone be dischaged by him.  107 S. E. 765; 25 R. C. L. sec. 56; 110 Mo. 286; 19 S. W. 530; 15 L. R. A. 847; 40 L. R. A. (N. S.) 28; 28 Okla. 94; 113 Pac. 921; 58 Tex. Cr. R. 209; 127 S. W. 208; 130 Cal. 82; 128 Tenn. 456.

Duly enrolled acts, properly authenticated, approved by the Governor and deposited with the Secretary of State as existing laws, are presumed to have been enacted in accordance with constitutional requirements. 3 Nev. 233; 34 S. W. 769; 174 S. W. 1108; 161 S. W. 1006; 187 Fed. 393.

If a statute is divisible, and is partly unconstitutional, that part may be rejected and the balance upheld; but if it is not divisible, and any part is unconstitutional, the entire statute falls.  25 Ark. 236; 34 Ark. 224; 49 Ark. 110.

Any material change in either house renders it null and void.  72 Ark. 565; 41 Ark. 471; 90 Ark. 174; 103 Ark. 109; 132 Ark. 240.

The courts will take judicial knowledge of enrolled bills as found in the office of the Secretary of State. 72 Ark. 563; 132 Ark. 240; 90 Ark. 174; 103 Ark. 109; 130 Ark. 503.

The act was passed in violation of sec. 26, art. 5 of the Const. 141 Ark. 140; 48 Ark. 82; 8 Cyc. 762; 93 Ark. 339; 156 Pa. 1121.

McCulloch, C. J. Road Improvement District No. 2 of Woodruff County was formed by order of the county court of that county, pursuant to the general statute authorizing the formation of road improvement districts (Crawford & Moses' Digest, sec. 5399 *et seq.*), and progress seems to have been made in preparing for the construction of the improvement, though it is not shown in the pleadings or proof in the present case to what extent the proceedings progressed.

The General Assembly, at the extraordinary session convened in January, 1920, pursuant to the proclamation of the Chief Executive, enacted a special statute bearing the title as follows: "An act to embrace Road Improvement District No. 2 of the Northern District of Woodruff County in, and to create Road Improvement District Number 16 of, Woodruff County, and for other purposes." The first section of that statute reads as follows: "That all assessments now levied on lands in Improvement District Number 2 of the Northern District of Woodruff County are hereby set aside and revoked, and that the territory of Road Improvement District Number 2 be and is hereby embraced in and made a part of the hereinafter created Road Improvement District Number 16 of the Northern District of Woodruff County; and that said District Number 16, hereinafter created, is benefited by the preliminary work, estimates and surveys made on account of District Number 2, and that District Number 16 shall assume the burden of payment of all preliminary expenses in the matter of formation, surveys, estimates, fees, etc., of District Number 2, and assessments are hereby authorized to cover the payment of said benefits

by said hereinafter created District Number 16; and the commissioners hereinafter appointed shall have control, as provided by law, over all the road improvements and territory herein embraced in Road Improvement District Number 16.''

The subsequent sections designated the boundaries of the district, specified the road or roads to be improved, named the commissioners, and contain other provisions with reference to assessing benefits, levying taxes, borrowing money and constructing the improvement.

Appellees are residents and owners of real property within the boundaries of the old district as well as the new district created by the special statute above referred to, and they instituted this action in the chancery court of Woodruff County to restrain the commissioners of Road Improvement District No. 16 from proceeding under the statute. The validity of the special statute creating Road Improvement District No. 16 is assailed on the grounds that it was not legally enacted, in that the bill was changed without authority during its progress through the House of Representatives; that it was not embraced within the Governor's proclamation for the extraordinary session, and that notice of the introduction of the bill was not given for the length of time required by the Constitution. The points of attack upon the validity of the statute will be discussed in the order in which they are made. .

The charge that the bill was changed without authority during its passage through the House is sought to be established from inspection of the original bill, with indorsements thereon, as it now appears on file in the office of the Secretary of State. It is shown by the inspection that the first page, which is typewritten, is in different type from that of the other pages of the bill and on different kind of paper. The bill cannot be stricken down on this ground, for the fact that one of the pages appears in different typewriting and on a different kind

of paper does not overcome the presumption of the regularity of its introduction and passage through the two Houses of the General Assembly. The rule is firmly established in this State that an enrolled statute "signed by the Governor and deposited with the Secretary of State raises the presumption that every requirement was complied with, unless the contrary affirmatively appears from the records of the General Assembly," etc., and that this presumption is conclusive "unless the records of which the courts can take judicial knowledge show to the contrary." *State* v. *Crowe*, 130 Ark 272; *Harrington* v. *White*, 131 Ark. 291; *Perry* v. *State*, 139 Ark. 227; *Booe* v. *Sims*, 139 Ark. 595; *Booe* v. *Road Imp. Dist.* 141 Ark. 140.

The further inquiry then presents itself whether there is anything appearing upon the preserved records of the General Assembly which overcomes the presumption arising from the enrolled statute in the office of the Secretary of State. We take notice of these records (*Butler* v. *Kavanaugh*, 103 Ark. 109; *Mechanics' Bldg. & Loan Assn.* v. *Coffman*, 110 Ark. 269), but, in addition to that, counsel have brought into the record certified copies of all the journal entries and a copy of the original bill with all of its indorsements.

The contention of appellees is that the title of the bill as introduced and passed in the Senate contained the word "abolish," instead of the word "embrace" as now appears in the original bill and in the enrolled statute, and that this change was made without proper amendment after the bill had been read the first and second times in the House. Counsel rely upon the journal entries of the two Houses to establish this charge.

The Senate Journal recites that Senate Bill No. 4, by Senator Roddy, "An Act to abolish Road Improvement District No. 2 of the northern district of Woodruff County in, and to create Road Improvement District Number 16 of, Woodruff County, and for other purposes", was read the first time on January 26, 1920, the

rules suspended and read the second time, and made a special order for January 27. The entry on the Senate Journal on January 27, 1920, recites the title of the bill in the same language as in the entry on the previous date. It states that the bill was read the third time and placed on final passage and passed, the aye and nay vote being set forth on the record, showing the affirmative vote of a majority. The entry on the House Journal on January 27, recites that "Senate Bill No. 4, being a 'bill to abolish Road Improvement District No. 2 of the northern district of Woodruff County, and to create Road Improvement District No. 16, and for other purposes,' was read the first and second time and placed on the calendar." The entry in the House Journal on January 30, showing the final passage of the bill, recites that "Senate Bill No. 4, by Senator Roddy, the same being a bill for 'an act to embrace Road Improvement District No. 2 of the northern district of Woodruff County in, and to create Road Improvement District No. 16 of, Woodruff County, and for other purposes,' was read the third time and placed on final passage." The entry further recites the aye and nay vote in detail, showing the affirmative vote of a majority of the House. The last entry in the two Houses is on the Senate Journal on February 2, 1920, reciting that "Senate Bill No. 4, by Senator Roddy, the same being a bill for an act to be entitled, 'An act to embrace Road Improvement District No. 2 of the northern district of Woodruff County in, and to create Road Improvement District No. 16 of, Woodruff County, and for other purposes,' was received by the Senate from the House." The bill was then enrolled and approved by the Governor on February 18, 1920, and the title of the act as enrolled corresponds with the language of the original bill as it now appears.

If the alleged change in the original bill, by substituting the word "embrace" for the word "abolish" should be held to be material so as to defeat the validity of the bill, the recitals of the journal are not sufficient to overcome the presumption of the regularity of the enactment.

At most, there is only silence of the record with respect to the substitution of the word, and the presumption must be indulged that the change was regular and was authorized. *Mechanics' Bldg. & Loan Assn.* v. *Coffman, supra; State* v. *Crowe, supra.* But the change, if made irregularly, was not material and did not affect the validity of the bill. The title of a bill has no controlling force (*Special School Dist. No. 33* v. *Howard,* 124 Ark. 475), and the substitution of the word "embrace" for the word "abolish" did not, if made, change the bill from its original purpose as introduced. When the two words are considered in the light of the body of the statute, the use of either one would be appropriate, for the statute itself, in fact, abolished Road District No. 2 and embraced it in the new district. In other words, under the statute the old district was swallowed up in the new district, and, speaking even in the strictest sense, it not only embraced the old district, but abolished it. Moreover, the use of the words, when we consider the immateriality of the change, must be construed to be merely a clerical misprision, for the difference in the journal entries in this instance is not sufficient to overcome the presumption arising from the enrolled statute approved by the Governor, especially since its language is in exact conformity with the original bill now on file in the office of the Secretary of State. *Desha-Drew Road Dist.* v. *Taylor,* 130 Ark. 503.

Our conclusion therefore is that this attack upon the validity of the statute is not supported by the record and is unfounded.

That part of the Governor's proclamation which specifies the legislation to be undertaken at the extraordinary session reads as follows:

"For the purpose of enacting laws establishing special or local road, bridge, drainage and levee improvement districts, and school districts, and conferring special powers thereon, and amending and curing defects in existing special or local laws for the same, and ratifying,

confirming and validating special or local improvement districts organized under general laws or special or local laws and enlarging the powers thereof, and to enact such laws as will permit the completion, reconstruction or extension of waterworks systems and other improvement districts in cities or towns."

The records of the General Assembly do not show that the extraordinary session was extended for the purpose of considering general legislation, and it therefore follows that, unless the bill for the statute now under consideration fell within the terms of the Governor's proclamation, the enactment was unauthorized and invalid. *Jones* v. *State, ante* p. 288. The contention is that the statute, in fact, abolished a road improvement district, that a bill for such a purpose was not embraced within the proclamation of the Governor, and that the whole statute being inseparable, was invalid, and that the effect of the statute is to abolish the old district. But it will be observed that no express words of negation are used in the proclamation, there being only an affirmative expression describing the subject-matter of legislation to be considered.

The Constitution (sec. 19, art. VI) in providing that "no other business than that set forth therein shall be transacted until the same shall have been disposed of, after which they may, by a vote of two-thirds of all the members elected to both houses, entered upon their journals, remain in session," etc., contains no restriction upon the power of the lawmakers except to confine themselves to the legislation specified in the proclamation until that business is finished. The power of the lawmakers with regard to legislation at the extraordinary session is therefore full and complete so far as it relates to the subjects specified in the proclamation. The language of the proclamation confines the legislation to "laws establishing special or local road, bridge, drainage and levee improvement districts, and school districts;" and the power to carry out such enactments is complete. The fact that the statute incidentally amends, or even

abolishes, another local district does not hamper the power of the Legislature in creating a new district which brings about that result.

Having clearly the power, under the Constitution and the proclamation of the Governor, to pass special laws establishing local districts, the power to pass such legislation to abolish or embrace other districts is a necessary incident to the exercise of the power conferred. If it be conceded that the enactment of a statute abolishing a road district and doing nothing more would not be within the Governor's proclamation, the present instance is not one of that kind, for the provisions of the bill with respect to the old district constituted, as before stated, the exercise of incidental powers in enacting legislation that falls expressly within the language of the proclamation.

Learned counsel for appellees rely upon the recent case of *Jones* v. *State, supra,* but we do not think the decision has any bearing on the question now before us. The statute considered in that case was held to be a general statute affecting all improvement districts, and that it was not within the subjects specified in the proclamation of the Governor.

The last contention in support of the chancellor's decree declaring the act unconstitutional is that notice of the introduction of the bill was not published for the length of time required by the Constitution. In support of this contention appellees introduced extrinsic evidence outside the legislative record showing that notice was not properly published for the requisite length of time. There is a conclusive presumption in favor of the legislative determination that notice of the introduction of a special bill had been properly published for the requisite length of time. That was the rule established by this court in *Chicot County* v. *Davies,* 40 Ark. 200, and has been adhered to down to the present date. We overruled a certain portion of that decision, not material to the present controversy, in the case of *Booe* v. *Road Imp. Dist., supra,* but the doctrine in *Chicot County* v. *Davies, supra,* was

reaffirmed in that case so far as it related to the conclusiveness of the legislative determination in regard to notice, except in the case of an extraordinary session, where the proclamation of the Governor was not made a sufficient length of time before the convening and adjournment of the session to give time for publishing the notice. We are asked to overrule the former cases on this subject, but the court declines to do that.

It follows that all of the attacks on the validity of the statute are unfounded, and that the decree in declaring the statute invalid was erroneous. The decree is therefore reversed and the cause remanded, with directions to dismiss the complaint for want of equity.

HART, J., dissents.