STATE NOTE BOARD *v.* STATE EX REL. ATTORNEY GENERAL.

4-2882

Opinion delivered December 5, 1932.

*Coleman & Riddick,* for appellant.

*Hal L. Norwood,* Attorney General and *Walter L. Pope,* Assistant, for appellee.

THOMAS C. TRIMBLE, JR., Special Justice. Appellee, State of Arkansas, through her Attorney General, filed suit against the State Note Board, attacking as unconstitutional § 17 of act No. 15, passed at the second extraordinary session of the Legislature of 1932, the same being in words and figures as follows, to-wit:

"Section 17. It shall be the duty of the State Note Board to issue short-term notes in lieu of all legal vouchers or warrants now or hereafter issued for work, labor, materials, or supplies, heretofore done or furnished by any contractor, subcontractor, materialman or laborer in the construction, maintenance or repair of the State Highways or for the State Highway Department upon request being made therefor by the legal holder or holders of any such obligations; such short-term notes to be in substantially the form of the short-term notes heretofore sold by said State Note Board for the State Highway Commission and executed in the same manner, bearing interest at the rate of 5 per cent. per annum from the

date of issuance, and not more than $750,000 worth of such notes shall mature on February 1, 1934, and the maturities of the balance thereof shall be equally divided, one-half to mature on February 1, 1935, and one-half to mature on February 1, 1936. The State Note Board shall use its discretion in arranging the maturity dates of the various notes issued so that any of such legal holders of said obligations shall not be given preference as to the maturity date of the notes issued to him. Said short-term notes shall be in denominations of $100, $500 and $1,000, and, if the amount due any of the legal holders of such obligations is less than the amount which can be paid by notes of those denominations, then such legal holder may pay the difference in cash and receive such note, or he may take from the State Highway Commission a voucher showing the balance that is due him and which cannot be paid in notes of that description, and which voucher shall be paid as soon as there shall be in the State Highway funds moneys available for the purpose; provided, this act shall not validate any claim, voucher, or warrant or other evidence of indebtedness issued under or pursuant to an illegal contract, and provided further that no note or notes shall be issued in lieu of any such claim in excess of $150, where such claim is based on a cost-plus contract or a contract not let on competitive bidding until such claim is approved and the issuance of such notes are authorized by the State Highway Audit Commission, or until the validity of such claim is finally adjudicated and determined by a court of competent jurisdiction. No additional highway bonds or highway notes shall be authorized, issued or sold in the calendar year of 1932, except those highway notes provided for in this section of this act to be issued in lieu of legal vouchers or warrants for work, labor, material or supplies heretofore done or furnished by any contractor, subcontractor, laborer or materialman in the construction, maintenance or repair of the State Highways, or for the State Highway Department, and not more than $1,750,000 worth of highway bonds shall be issued in the calendar year of 1933

or in any calendar year thereafter, this being the approximate amount necessary to match Federal aid and thereby prevent the loss of such aid; and no highway bonds shall hereafter be issued except with the approval of a majority of the State Note Board including the Governor, or with the approval of at least seven members of the State Note Board, nor shall any highway bonds be issued in any year in excess of the amount of Federal aid allotted to Arkansas under Acts of Congress for that particular year. No bonds or other evidences of indebtedness shall ever be sold under the provisions of this act for less than par.''

The ground upon which the validity of the statute was assailed being that said section was not within the purview of the Governor's proclamation convening the General Assembly, and asking that the State Note Board, which met and adopted resolutions for the issuance of $2,100,000 in short-term State notes as provided under said section of said act No. 15, be forever enjoined and restrained from causing the printing or lithographing of said State notes and from issuing the same.

Appellant demurred to the complaint because it did not state a cause of action, and that the appellee was not entitled to the relief prayed for, and that the said State Note Board was acting within its authority in issuing the notes mentioned in the complaint.

The demurrer to the complaint was overruled, and the appellant elected to stand on its demurrer, and a decree was rendered perpetually enjoining the board from issuing said short-term notes.

The sole question involved is whether or not the provisions of § 17 of said act are reasonably within the purposes specified within the Governor's call.

The Constitution of 1874, in reference to extraordinary sessions of the General Assembly, contains the following provisions, to-wit: ''The Governor may, by proclamation, on extraordinary occasion convene the General Assembly at the seat of government or at a different place, if that shall have become, since their last

adjournment, dangerous from any enemy or contagious disease, and he shall specify in his proclamation the purposes for which they are convened, and no other business than that set forth therein shall be transacted until the same shall have been disposed of, after which they may, by vote of two-thirds of all the members elected to both houses, entered upon their journals, remain in session not exceeding fifteen days.''

The General Assembly of the State of Arkansas convened in special session on March 15, 1932, by proclamation of the Governor of the State of Arkansas, same having been issued on March 12, 1932, that part of the call affecting this suit being as follows, to-wit:

''First. To authorize the issuance of revenue bonds that will bring about an extension of the maturity dates of the road district bonds which the State is now paying under the Martineau road law and thereby prevent a default in the payment of such bonds, and render available sufficient funds for the maintenance of the State Highways and for matching Federal aid for new construction.''

As will be observed from the proclamation of the Governor, and the act passed by the General Assembly, said call was made for the following reasons: First, to prevent a default in the payment of the road district bonds which the State was paying under the Martineau road law. Second, to render available sufficient funds for the maintenance of the State Highways. Third, to render available sufficient funds for matching Federal aid for new construction.

All of the above subjects are so closely connected and dependent upon each other that no one of them can be entirely segregated from the whole and treated by itself. Act No. 15 embraced all of the subjects and made provisions for each.

The rule announced in decisions of this court, in the cases of *Jones* v. *State*, 154 Ark. 288, 242 S. W. 377, and *Sims* v. *Weldon*, 165 Ark. 18, 263 S. W. 42, are to the effect that lawmakers when convened in extraordinary

session, "may act freely within the call and legislate upon any or all of the subjects specified, or upon any part of a subject; and every presumption will be made in favor of the regularity of its action," and that the provisions of the Constitution in question merely require the Governor "to confine legislation to particular subjects and not to restrict the details springing out of the subjects enumerated in the call," and is supported by many other authorities. 59 C. J. 527; *State* v. *Shores,* 7 S. E. 31 W. Va. 491, 413, 13 Am. St. Rep. 875; *Stockard* v. *Reid,* 57 Tex. Civ. App. 126, 121 S. W. 1144; In re Governor's Proclamation, 19 Colo. 333, 35 Pac. 530; In re Amendments of Legislative Bills, 19 Colo. 356, 35 Pac. 917; *McKee* v. *English,* 147 Ark. 449, 228 S. W. 43; *Road Imp. Dist.* v. *Sayle,* 154 Ark. 551, 243 S. W. 825.

The subject embraced in the call should be considered and construed in its entirety and not in subdivisions or detached parts, giving the language its ordinary meaning. *In re Likins,* 223 Pa. 456, 72 Atl. 858.

As has been observed, the purposes, as indicated in the proclamation, for the calling of said extraordinary session of the General Assembly, were for the three reasons above set forth. The use of the language authorizing the Legislature to issue revenue bonds was merely a suggestion as to how to dispose of the subject-matter designated in the call, and while the Governor may make such suggestions, such suggestions or directions are not binding on the Legislature or restrictive of the legislative power, and the action of the Governor in prescribing in his call the character of bonds to be issued to bring about the necessary legislation is treated as being merely advisory. 25 R. C. L. 805.

"It was never contemplated by the Constitution that the Governor should restrict the Legislature as to details, methods or manner in bringing about the end sought." Ex parte *Fulton,* 86 Tex. Cr. R. 149, 215 S. W. 331.

"Specific instructions on the subject-matter in the call can, at best, be regarded only as advisory and not as limiting the character of legislation that might be had

upon the general subject." *People* v. *Johnson*, 23 Colo. 150, 46 Pac. 681.

We are not unmindful of the fact that the construction of the Legislature is not conclusive upon the court, and too great a latitude might abrogate the restrictions of the Constitution, yet it is entitled to the highest consideration by the court. *Long* v. *State*, 58 Tex. Cr. R. 209, 127 S. W. 208.

In the case of *State* v. *Clancy*, 30 Mont. 529, 77 Pac. 314, the court said: "The Governor can not in advance tie the hands of the Legislature. Any enactment which will meet the ends sought to be accomplished in his call must be deemed to be embraced within the limits of the subjects submitted for consideration. That a liberal rule for interpretation of these proclamations has been generally applied, to the end that the legislation enacted in pursuance thereof be operative, is apparent from adjudicated cases."

We are therefore of the opinion that said § 17 of act No. 15 is within the purview of the Governor's call, and that a fair, reasonable and correct construction of the proclamation authorized the legislation in question. This case will therefore be reversed, remanded with directions to sustain the demurrer, and for further proceedings according to law and the principles of equity and not inconsistent with this opinion.

KIRBY and MEHAFFY, JJ., dissent.

HUMPHREYS, J., disqualified and not participating.