POPE *v.* OLIVER.

4-5183

Opinion delivered June 13, 1938.

*Troy W. Lewis,* for appellant.

*J. E. Lightle, Jr., William D. Hopson, McKinley & Thompson* and *Laurence J. Berger,* for appellees.

*Ben D. Brickhouse, Linwood Brickhouse, U. A. Gentry, Leffel Gentry* and *Madison K. Moran, Amici Curiae.*

BAKER, J. Appellant filed suit in the White chancery court to enjoin city officers of Searcy from collecting a fee of fifty cents, charged for inspecting his automobile, as provided under act 300 of the Acts of 1937, and as provided by certain ordinances enacted pursuant to authority under said act 300. We pretermit a discussion of any legal principles involved insofar as an injunction proceeding may be invoked to prevent the particular criminal prosecution. If that were the only question and it were free from any contention as to property rights, the real issue presented upon this appeal perhaps might not be determined. The matter for decision argued not only by briefs of counsel for appellant and for the ap-

pellees, but also by briefs *amici curiae,* is the legality of a portion of § 1, act 11 of the Extraordinary Session of the Legislature of 1938. Practically the same contention is made by all parties representing the appellant and almost identical responses have been filed by those having the different view. The matter really involved is the constitutionality of a portion of § 1, act 11, of the Extraordinary Session of the Legislature of 1938. This particular portion of said section in controversy repeals that part of act 300 of the Acts of 1937 which provides for the charge and collection of a fee for testing automobiles, as provided by § 135 of said act. Section 1, as approved, is as follows: ''The authority of the Arkansas State Highway Commission and the Commissioner of Revenues to fix and collect tolls for passage on any state toll bridge in this state is hereby revoked, and said toll bridges are declared to be free. In consideration of the refund to the state by the Federal Government of a portion of the cost of the construction of said toll bridges, the state hereby pledges itself forever to keep said bridges free of tolls, and to maintain and repair said bridges, and the approaches thereto, in such manner as may be necessary. In order to partly replace the revenues which may be lost to the Highway Fund by reason of the discontinuance of collection of tolls on the bridges herein mentioned, no inspection fee on automobiles as is now provided by law shall be collected, thereby increasing the number of automobiles which operate on the highways of state and a consequent increase in revenues from gasoline taxes and automobile license taxes, which revenues under the law are paid into the Highway Fund.''

That portion of § 1 aforesaid which is questioned is the last sentence in said section and begins with the words ''In order to partly replace,'' etc. This was inserted in the original bill by way of amendment.

It is urged by appellant, and also argued by those supporting appellant's position, that the only authority under which the Legislature acted in the passage of the above disputed and quoted portion of § 1, act 11, must

be found in paragraph 6 of the proclamation of the Governor calling the General Assembly into the Extraordinary Session, if indeed, it be found at all. We may say it is conceded by all parties interested that if this particular bit of legislation cannot be held to be within the purview of said paragraph 6 of the proclamation, then it was not authorized by the call and must be declared unconstitutional. Paragraph six of said proclamation reads as follows: "To provide for the removal of authority to collect tolls on bridges and to pledge the state to keep the said bridges forever free."

The chancery court sustained a demurrer to the complaint, the effect of which was to hold that the questioned portion of § 1, act 11, above quoted, was in contravention of the Constitution and is, therefore, invalid.

It is argued that every reasonable presumption must be indulged to sustain the legislative enactment and that if it can be determined under the proclamation, or by the indulgence of such reasonable presumptions, that the particular portion of § 1, act 11, in controversy, was within the purview of. the Governor's call, when considered from the broad or comprehensive view of the entire field of legislation probably within the legislative mind and intent, then the act, including the questioned portion, must be upheld. We agree that within the scope of the call or proclamation the legislative bodies are sole and exclusive judges of what is proper action.

In recognition of the independence of each of the three departments of the state government, we are inclined to yield to that viewpoint as far as may be practicable wherein such yielding will not do violence to statements simply and plainly made and concerning which there can be no question in reasonable minds as to what such statements mean or imply.

We think it must appear to anyone considering this matter fairly and impartially that if the foregoing contentions, made to support the questioned portion of § 1, of act 11, aforesaid, could be accepted without any reservation then the result would be to ignore such provisions of the Constitution of the state as § 19 of art. VI

and § 21 of art. V. Almost any astute representative or legislator could assert or allege some reason or purpose in regard to matters wholly unrelated, and by so declaring an affinity which was in truth non-existant preclude further investigation or consideration, and in that way nullify constitutional provisions that would otherwise be deemed as impaired or infringed upon by such action. Because it seems reasonable that a statement of such proposition is a sufficient answer to the contention, we refrain from further discussion of it.

There can be no misunderstanding about paragraph 6 of the Governor's call and any legislation under the provision of said paragraph 6, which is to provide for the removal of authority to collect tolls on bridges and to pledge the state to keep them forever free, does not embrace within its terms, or any reasonable implication, as such language is ordinarily understood, the authority to enact any law for the collection of revenue. But it is contended that in order to keep the bridges forever free from tolls, revenue should be raised to take the place of the tolls that were eliminated by the first part of the act, and it is further argued that when the Governor signed the bill and it became a law he thereby, as far as he was able, declared this questioned portion as within the call made by him. In response to that argument it may be said that after the Chief Executive had made the proclamation any interpretation which imagination might conceive that he gave to it, when not found in the language itself, is wholly beside the question and without merit. It can be argued, with perhaps greater show of reason, that the matter of raising revenue, so that the bridges might be freed of tolls, was one considered by the Governor before the call was made, and, doubtless, it would not have been made had it not been determined before hand that such loss of revenue, as occurred on account of the repeal of authority to collect tolls, was one that the state could afford, particularly in view of the fact that we must and do presume that by freeing the bridges from the collection of tolls the state would be entitled to receive perhaps more than five millions of dollars to be paid into the State Highway Fund by the

National Government. This sum, if not complete compensation for any loss that may have occurred, at least, justified the issuance of the proclamation contained in paragraph 6 above.

We think there arises, also, out of a consideration of the simple and direct statements in the proclamation, and out of the presumption just mentioned above, the fact that the state could forego the loss of such revenue, otherwise there would have been in the same proclamation authority to legislate to raise revenue to take the place of the tolls. The very fact that this was not done does not imply a deficiency which the Legislature must cover, but a lack of power to act upon the new or unmentioned subject of the restoration of revenues. The constitutional limitation is as follows:

"Section 19. The Governor may, by proclamation, on extraordinary occasions, convene the General Assembly at the seat of government, or at a different place if that shall have become since their last adjournment dangerous from an enemy or contagious disease; and he shall specify in his proclamation the purpose for which they are convened, and no other business than set forth therein shall be transacted until the same shall have been disposed of, after which they may, by a vote of two-thirds of all the members elected to both houses, entered upon their journals, remain in session not exceeding fifteen days." Section 19, art. VI, Constitution.

As the foregoing provision has been construed we adhere to the announcements of this court to the effect that the General Assembly may consider not only the legislation specifically mentioned and set forth in the proclamation, but such other legislation as may necessarily or incidentally arise out of that call, such as any necessary detail in accomplishing the purposes designated by the call and the extensive latitude or wide range will be conceded to the Legislature in deciding what comes within the purview of the call; but even in doing this, it must be kept in mind that reasonable interpretation and consideration must be exercised in determining the final question of what was within the purview of the proclamation.

As this court said in the case of *Jones* v. *State,* 154 Ark. 288, 242 S. W. 377, in speaking of act 151 of the Acts of the Special Session of 1919, as follows: "but its validity must be tested, not by any consideration of its beneficial safeguards, but solely upon a consideration of the provisions of the Constitution pursuant to which it was enacted." Even Judge HART, in the dissenting opinion, in that same case, announced the purpose of the foregoing § 19, of art. XVI, when he said: "The intention of this constitutional provision is to prevent the enactment of laws having no connection or relation to the subjects embraced in the call. The constitutional provision should be given a practical and liberal construction to carry out its evident purpose, and this is in the application of the maxim of construction that all doubts shall be reserved in favor of an act of the Legislature."

In the light of this well considered case and of the eminent authority which it affords, it seems that we must hold that there is no inclusion in the proclamation to repeal the act giving authority to collect tolls, equal authority to assess or to provide new revenue and particularly by the repeal of a small portion of some act having no kind of relationship to toll bridges, or to tolls collected therefrom, and particularly, is this true when there is no such provision in the proclamation that the loss of revenue by striking down the tolls should be otherwise supplied. Nor is there anything in the Governor's proclamation that suggests, or even remotely hints that any legislation was necessary concerning inspection fees, their preservation or their destruction.

A situation somewhat incongruous would arise if all of § 1 of act 11 aforesaid could be upheld. Act 300 of the Acts of 1937 is comprehensive in its scope and provides among other things for the inspection of automobiles. These provisions for the inspection of automobiles are not expressly repealed and it is the duty of the automobile owner to submit his car for this inspection and to abide by the results of such inspection, to make such repairs as may be required in the interest of public safety.

The provisions of act 11 of the Extraordinary Session of 1938, do not impair these duties and obligations, but said act provides "no inspection fee on automobiles, as now provided by law, shall be collected." Unless the remaining portion of said act, in language "thereby increasing the number of automobiles which operate on the highways of the state" may be deemed an implied repeal of those provisions of act 300 to require an inspection, we are confronted with a legislative anomaly difficult to understand.

Because of the conclusions we have reached and above stated, it would unduly extend this opinion to analyze numerous authorities cited by all the interested parties. We think our conclusions are supported and upheld by the numerous decisions of this court upon related subjects and content ourselves by a mere mention of such authorities as *Crawford Co. Levee Dist.* v. *Cazort,* 190 Ark. 257, 78 S. W. 2d 378; *State Note Bd.* v. *State ex rel Atty. Gen.,* 186 Ark. 605, 54 S. W. 2d 696; *Smith* v. *Refunding Board of Ark.,* 191 Ark. 1, 83 S. W. 2d 76.

We take notice of the fact that the particular portion of § 1 of act 11, in controversy, was attached to the original bill by way of amendment. Our authority for this judicial inspection is *Sims* v. *Weldon,* 165 Ark. 13, 263 S. W. 42; *Sparling* v. *Refunding Board,* 189 Ark. 189, 71 S. W. 2d 182; *McCrary* v. *Schenebeck,* 191 Ark. 698, 87 S. W. 2d 572; *Connor* v. *Blackwood,* 176 Ark. 139, 2 S. W. 2d 44.

The amendment rode piggyback through both houses of the Legislature and, like the parasite it is, was clinging to the main bill when it received executive approval.

It is also argued, we think with some show of reason, that the questioned portion of § 1, act 11, which we are considering, coming as an amendment to the original bill, violates § 21 of art. V of the state Constitution, which provides that no bill shall be so altered or amended, on its passage through either house as to change its purpose. If this particular portion of said § 1 be eliminated and then the bill be read in its entirety, its purpose becomes apparent and the intention of the act is under-

standable, and we suggest in all fairness to those who contend otherwise that had the proponents of this amendment been asked to define or give some reason or declare some relationship as between the original bill and the amendment offered to strike down the inspection fees for testing automobiles, there would perhaps have been as many different explanations as there were those attempting to make them. It is true the purpose of the original act was to free the bridges from tolls and it was a matter of paramount importance and was embraced within the Governor's call, but to do so it was not necessary to repeal a law providing for the necessary expense for the inspection of automobiles, an act apparent upon its face for the protection of the public against the unnecessary loss of life and limb and damage to property.

In relation to such amendments this court has in effect held:

The purpose of this provision in our Constitution is to prevent amendments to a bill which would not be germane to the subject of the legislation expressed in the title of the act, which it purports to amend. *Lofton* v. *Watson,* 32 Ark. 414; *Hickey* v. *State,* 114 Ark. 526, 170 S. W. 562; *Cone* v. *Garner,* 175 Ark. 860, 3 S. W. 2d 1; *Matthews* v. *Byrd,* 187 Ark. 458, 60 S. W. 2d 909.

This legislation should have been wholly uninfluenced by this unrelated matter which perhaps may have become a proposition of paramount importance in its consideration by the legislative bodies, and one of the evils arising out of such conditions is that members of either house might have preferred to take the bill with the amendment when they would have otherwise, had they been free to do so, voted against the amendment, or it may be argued that some might not have voted for the original bill had not this unrelated subject been attached to it as an inducement for their support. Either situation is so far from the ideal as to be almost intolerable under the Constitution as impairing the free exercise of legislative discernment and discretion.

Since we have found, and now hold, that the above questioned portion of § 1, act 11, is not within the purview of the Governor's call, it must be held to be invalid.

The act No. 11, however, provides that its provisions are severable and that any invalid portion of it may be stricken from it without impairment of the remaining part of the enactment.

Under the view we have taken, we hold the chancery court was correct in sustaining the demurrer to the complaint, which ruling in legal effect was a declaration that the foregoing questioned portion of § 1 of act 11, was invalid.

Decree is, therefore, affirmed.