The Honorable Bob Teague State Representative 4109 Carter Lane Little Rock, AR 72212
Dear Representative Teague:
This is in response to your request for an opinion on the following questions:
 Do Senate Bill 15 and House Bill 1016 of the Fourth Extraordinary Session of 1988 reasonably fall within the purposes specified by the Governor in his Proclamation calling the session?
 If these bills are within the call, are they otherwise constitutional?
Section 19 of Article 6 of the Constitution of Arkansas, which provides for the convening of the Legislature in extraordinary session by the Governor, must be considered in response to your first question. This constitutional provision states that the Governor shall specify in his proclamation ". . . the purpose for which they are convened, and no other business than that set forth therein shall be transacted until the same shall have been disposed of. . ."
The purpose stated in the proclamation in question is, among other things, "[t]o amend Arkansas Code of 1987 Annotated, Title 14, Chapter 164, Subchapter 3, to authorize municipalities and counties to finance cable television facilities by the use of bonds." See Proclamation Call Item 18. The bills in question would further amend Title 14 to provide for a tax levy to finance capital improvements without a bond issue.
It is my opinion that if faced with this issue, a court would in all likelihood conclude that the bills are within the purview of the Governor's proclamation. This conclusion is indicated in part by general rules that have been articulated by the Arkansas Supreme Court in its consideration of the subjects embraced within a proclamation. The court has stated:
 [L]awmakers when convened in extraordinary session, `may act freely within the call and legislate upon any or all of the subjects specified or upon any part of a subject; and every presumption will be made in favor of the regularity of its action.'. . . [T]he provisions of the Constitution in question merely require the Governor `to confine legislation to particular subjects and not to restrict the details springing out of the subjects enumerated in the call.'
State Note Bd. v. State ex rel. Atty. Gen.,186 Ark. 605, 609-610, 54 S.W.2d 696 (1932), quoting Jones v. State, 154 Ark. 288, 242 S.W. 377 (1922) and Sims v. Weldon, 165 Ark. 18, 263 S.W. 42 (1924).
The issue in State Note Bd. v. State, supra, involved the following language of the call:
 `To authorize the issuance of revenue bonds that will bring about an extension of the maturity dates of the road district bonds which the State is now paying under the Martineau road law and thereby prevent a default in the payment of such bonds, and render available sufficient funds for the maintenance of the State Highways and for matching Federal aid for new construction.'
186 Ark. at 609. The act in question authorized the issuance of short-term notes in lieu of legal vouchers or warrants and placed limitations on the issuance of additional highway bonds. The court quoted the foregoing rule in approving the act, and further stated as follows:
 The use of the language authorizing the legislature to issue revenue bonds was merely a suggestion as to how to dispose of the subject-matter designated in the call, and while the Governor may make such suggestions, such suggestions or directions are not binding on the legislature or restrictive of the legislative power, and the action of the Governor in prescribing in his call the character of bonds to be issued to bring about the necessary legislation is treated as merely advisory.
186 Ark. at 610. The court then cited authority from several other jurisdictions quoting the following language from Texas and Montana cases:
 `It was never contemplated by the Constitution that the Governor should restrict the legislature as to details, methods or manner in bringing about the end sought.'
Id., citing Ex parte Fulton, 86 Tex. Cr. R. 149,215 S.W. 331.
 `The Governor cannot in advance tie the hands of the legislature. Any enactment which will meet the ends sought to be accomplished in his call must be deemed to be embraced within the limits of the subjects submitted for consideration. That a liberal rule for interpretation of these proclamations has been generally applied, to the end that the legislation enacted in pursuance thereof be operative, is apparent from adjudicated cases.'
Id., at 611, citing State v. Clancy, 30 Mont. 529,77 P. 314.
As noted by the Arkansas Supreme Court in McCarroll, Commissioner of Revenues v. Clyde Collins Liquors, Inc., 198 Ark. 894, 902,132 S.W.2d 6 (1939), the intention of the constitutional provision is to prevent the enactment of laws having no connection or relation to the subjects embraced in the call. The court therein stated that the constitutional provision should be given a practical and liberal construction, and that all doubt must be resolved in favor of the legislative enactment. Id., quoting Pope v. Oliver, 196 Ark. 394, 117 S.W.2d 1072
(1938); See also, Ark. State Highway Commission v. Dodge, 186 Ark. 640, 647, 55 S.W.2d 71 (1932).
It is significant to note, in considering the Proclamation in question, that one of the purposes of the session, as reflected in Item 18 of the call, was to amend Title 14 of the Arkansas Code to authorize the use of bonds to finance certain facilities. Senate Bill 15 and House Bill 1016 propose to amend Title 14 further to provide for a tax levy to finance capital improvements without a bond issue. It may reasonably be concluded, applying the foregoing precepts, that these bills are related to the subjects embraced in the call and are in furtherance of the ends sought to be accomplished therein.
You have also inquired as to the constitutionality of these bills. While it is my opinion that Senate Bill 15 may pose problems. I believe that House Bill 1016 will withstand scrutiny. Senate Bill 15 makes specific reference to the tax authorized under A.C.A. 14-164-301 — 338, a tax to retire bonds in accordance with Amendment 62 to the Constitution of Arkansas. The absence of a bond issue may generate questions under Senate Bill 15.
The language of the House Bill 1016, relevant to its constitutionality, is as follows:
 If a legislative body determines that a one percent (1%) sales or use tax or any other local tax authorized by law would, if levied for no longer than twelve (12) months, produce sufficient revenue to finance capital improvements of a public nature without resorting to a bond issue, the legislative body may dispense with the issuance of bonds, levy the tax for no longer than twelve (12) months, and appropriate the resulting revenues, subject to paragraphs 2 through 4 of Section 4 of Article 12 of the Arkansas Constitution, provided: (a) a majority of the qualified electors of the county or municipality voting on the question at a general or special election shall have approved the tax and the purpose of the capital improvements; and (b) the revenues from the tax are expended solely for the purpose authorized by the electorate.
The bill proposes to place the new statute as the final provision in A.C.A. 14-164-301 et seq., which is entitled the "Local Government Bond Act of 1985" and is the enabling legislation for Amendment 62 to the Arkansas Constitution.
It should be noted from the outset that in passing upon the constitutionality of the bill, the following principles would govern a court's determination. Firstly, "the state's constitution is neither an enabling act nor a grant of the enumerated powers, and the legislature may rightfully exercise the power of the people, subject only to the restrictions and limitations fixed by the constitutions of the United States and the state." Wells v. Purcell, 267 Ark. 456, 464,592 S.W.2d 100 (1979). Secondly, acts of the legislature carry a strong presumption of constitutionality, State v. Ruiz, 269 Ark. 331,602 S.W.2d 625 (1980), should not be held invalid for repugnance to the Constitution unless the conflict is clear and unmistakable, Board of Trustees of Municipal Judges and Clerks Fund v. Beard, 273 Ark. 423,620 S.W.2d 295 (1981), and if it is possible to construe a statute as constitutional, a court will do so. Taylor v. Finch, 288 Ark. 50,701 S.W.2d 377 (1986). Thirdly, the fact that legislation is novel is no evidence of its unconstitutionality. Railroad Retirement Board v. Alton R. Co., 295 U.S. 330 (1935).
With these principles in mind, we are prepared to evaluate both the language of the Arkansas Constitution and the bill to determine any "repugnancy". The only Arkansas constitutional provision which could arguably invalidate this bill is Amendment 62, which provides for the issuance of bonds by counties and municipalities.
The Amendment also contemplates the levy of taxes to retire the bonds.
The specific language provides:
 The tax to retire the bonds may be an ad valorem tax on real and personal property. Other taxes may be authorized by the General Assembly or the legislative body to retire the bonds.
To conclude that the bill is "repugnant" to the language of Amendment 62 is unreasonable. The Amendment does not provide that "other taxes may be authorized by the General Assembly only to retire the bonds." The Amendment merely provides for the issuance of taxes to retire bonds. It does not prohibit the issuance of taxes for other purposes. In light of the fact that the Arkansas Constitution is not a grant, but a restriction of legislative power, and bearing in mind the precept that legislative power over taxation, absent a constitutional conflict is supreme, (English v. Oliver, 28 Ark. 317 (1873)), it must be concluded that the bill is constitutional, there being no constitutional provision in conflict therewith.
Additionally, if the bill were held repugnant to Amendment 62, then the amendment must be read to prohibit all "other taxes" which are not levied for the purpose of retiring bonds. The implication of this construction on existing city sales taxes is manifest. A finding that House Bill No. 1016 is unconstitutional would be equivalent to a holding that legislative bodies in Arkansas can finance capital improvements only with bonds. It is my opinion that this is an unreasonable construction of the Constitution.
It could also be argued that by placing the new provision in Title 14, Section 164, subchapter 3, the legislature has surpassed the purposes and intent of the subchapter which is to "enable the accomplishment and realization of the public purposes intended by Arkansas Constitution, Amendment 62. . . ." A.C.A. 14-164-302. However, this argument overlooks the final language of the provision which concludes ". . . and is not intended to otherwise limit in any manner the exercise of the powers of counties and municipalities." See also, A.C.A. 14-164-305 which explicitly provides that the subchapter is not intended to restrict alternative means of financing. In any event, the bill contains a repealer clause, and it must be recognized that subsequent legislation controls over any provision in conflict therewith.
It is therefore my opinion, based upon the foregoing, that HB 1016 will withstand constitutional scrutiny.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorneys General Elana L. Cunningham and Elisabeth A. Walker.
Sincerely,
STEVE CLARK Attorney General
SC:arb
[1] It is assumed herein that application of the bill would not violate Arkansas Constitution Article 12, 4.