LEONARD *v.* STATE EX REL. ATTORNEY GENERAL.

4—2668

Opinion delivered June 6, 1932.

Arthur G. Frankel, for appellant.

Carl E. Bailey, Hal L. Norwood, Attorney General, and Walter L. Pope, Assistant, for appelleè.

Rose, Hemingway, Cantrell & Loughborough, Charles B. Thweatt and Robinson, House & Moses, amici curiae.

McHANEY, J. The State of Arkansas, on the relation of her Attorney General, Hal L. Norwood, brought this action against appellants, Roy Leonard, State Treasurer, and Oscar Humphrey, State Auditor, to enjoin the Auditor from issuing State warrants on certain vouchers of the State Highway Commission, and the Treasurer from paying such warrants, on a complaint as follows: "That during the years 1930, 1931 and 1932 the Arkansas State Highway Commission entered into purported agreements with certain contractors to build and repair certain State highways in the State of Arkansas; that said purported agreements consisted of propositions made by contractors to the chief engineer, or the chairman of the Arkansas State Highway Commission, in which the contractor proposed to do certain work and furnish certain material at unit prices set up and described in said propositions. That said propositions were accepted by a notation at the foot thereof in these words, 'Accepted, Arkansas State Highway Commission, by Dwight H. Blackwood', the said Dwight H. Blackwood being the chairman of the Arkansas State Highway Commission. Said propositions were duly filed in the office of the State Highway Commission and are now on file in the office of said Commission. A copy of said purported agreement is filed herewith, marked Exhibit A and made a part of this complaint.

"Plaintiff further states that during said years of 1930, 1931 and 1932, the said Arkansas State Highway

Commission entered into other purported agreements whereby certain contractors were engaged to build and repair certain State highways in the State of Arkansas, and in which propositions said contractors agreed to furnish on a rental basis certain equipment for unloading and storing materials, manufacturing and transporting, laying and rolling paving mixture together with the required materials, labor, fuel, lubricants, repairs, hand tools, barricades, and lights and other necessary materials and equipment, and in which propositions said contractors offered said equipment to the Arkansas State Highway Commission upon a rental basis of a certain amount per calendar day. In such propositions said contractors also agreed to furnish necessary labor and materials at actual cost to the contractor plus fifteen per cent. Said purported agreements, or contracts, provided further that the cost of paving mixture laid on the road would not exceed a certain amount per ton. Such propositions were accepted by the following notation at the foot thereof, 'Accepted, Arkansas State Highway Commission, by D. H. Blackwood, Chairman.' Said propositions were duly filed in the office of the State Highway Commission and are now on file in said Commission, a copy of this proposition is filed herewith and marked Exhibit B and made a part of this complaint.

"Plaintiff states that the defendants, Roy Leonard, as State Treasurer, and Oscar Humphrey, as State Auditor, are charged with notice that the said purported contracts have been entered into by the Arkansas State Highway Commission and all of the contractors who have been working under such agreements.

"Plaintiff further states that neither of said propositions was advertised as required by law, or at all, and neither of said purported contracts was let on competitive bidding, and each proposition called for payment by the State of more than one thousand dollars.

"That each of said purported contracts requires the payment by the Arkansas State Highway Commission out of funds belonging to the State of Arkansas of labor

and material and rental that are in excess of the actual cost and value thereof.

"Plaintiff further states that the Arkansas State Highway Commission has issued vouchers to said contractors for payment of amounts alleged to be due upon the basis of unit prices, rental prices and cost plus prices mentioned in said propositions; that said vouchers, issued in payment of amounts for alleged unit prices as set out in said contracts, of which Exhibit A is an example, are in excess of the actual cost and value of labor, equipment and materials used, and that said vouchers, issued in payment of amounts for rental of equipment though issued for the designated rental in said contracts, are in excess of the actual rental value of such equipment, and that said vouchers issued in payment of amounts claimed to be due the contractors under the form of contract represented by Exhibit B, are fifteen per cent. in excess of the cost of labor and materials, and, although said vouchers do not exceed in amount the maximum guarantee mentioned in said proportions, they do exceed the actual cost of material, rental, labor, repairs, fuel and freights and superintendence of work.

"Plaintiff states that said purported agreements entered into between said contractors and said State Highway Commission are null and void, and that the vouchers issued to said contractors are null and void.

"That said vouchers will be presented to the Auditor of State and demands made upon him for the issuance of warrants upon the State Treasury, and that, unless restrained, the State Auditor will issue warrants upon the State Treasury for the amounts mentioned, and, unless restrained, the State Treasurer will pay the money of the State of Arkansas to the holders of said warrants, and the State of Arkansas will have to suffer great and irreparable damages.

"Wherefore plaintiff prays that the defendants be restrained from issuing and paying warrants that have been, or may be in the future, issued by the State Highway Commission upon the kind of contracts herein set

out, and that plaintiff have any and all other proper and equitable relief.''

Exhibit A mentioned in the complaint consists of a form of proposal made by contractors to the State Highway Commission, hereinafter referred to as the Commission, and, omitting formalities, is as follows: ''We will remove dust and dirt from existing road surface, true up old base with additional gravel where needed (State Highway Commission to furnish said gravel on the road); then furnish and apply a prime coat of cut-back asphalt at the rate of one-half gallon per square yard, then blade, shape and roll the surface. When the surface is bonded and set, we will furnish and apply an application of hot asphalt averaging one-half gallon per square yard, furnish and apply and roll a covering of pea gravel. The gravel to be furnished and applied by us at the rate of thirty-five pounds per square yard.

''For the above work and materials furnished, we shall be paid the sum of twenty-seven cents per square yard.

''When additional gravel is added to bring up this base, the one-half gallon application of cut-back prime coat will not be sufficient to bond and incorporate the loose gravel with the old base, and where the additional amount of cut-back asphalt is needed and required, we will furnish and apply same as directed by your representatives.

''For all cut-back asphalt furnished and applied in excess of one-half gallon per square yard, we shall receive nine cents per gallon.'' Such proposals were accepted as follows: ''Accepted; Arkansas Highway Commission, by Dwight H. Blackwood.'' Such contracts were those referred to as having been made on a unit basis.

Exhibit B, mentioned in the complaint, being the form of proposal made by contractors on the rental and the cost plus basis, follows: ''We beg to submit, for your consideration, the following proposition for furnishing on a rental basis the necessary equipment, completely installed at our expense, for unloading and storing ma-

terials, manufacturing and transporting, laying and rolling the paving mixture, together with the required materials, labor, fuel, lubricants, repairs, hand tools, barricades and lights.

"We will furnish the following equipment completely installed on the job in first class working condition:

"One asphalt mixing plant, complete with power, having a capacity of not less than 150 tons paving mixture per ten-hour day.

"One 10-ton 3-wheeled roller, steam powered;

"One 8- or 10-ton tandem roller, steam powered;

"One 2-car capacity asphalt storage tank, equipped with steam coils for heating;

"One 1-car capacity fuel oil storage tank;

"One asphalt pump with all necessary connections;

"One fuel oil pump, with all necessary connections;

"One clam shell outfit for unloading and handling materials.

"All necessary hand tools for operating asphalt plant and laying asphalt surface on the road.

"All necessary forms and steel pins for laying asphalt surface on road.

"All necessary trucks, equipped with steel bodies and hydraulic hoists for transporting paving mixture from the asphalt plant to the line of work.

"All necessary trucks for moving forms, transporting labor, fuel, water, etc., to all points along line of work.

"All necessary automobiles to transport superintendent and foreman over the line of work.

"All necessary barricades, light and danger signs, necessary to protect the public and employees while the work is in progress.

"We will also furnish all necessary fuel, lubricants, oils, gasoline and tires, necessary for the satisfactory operation of all equipment and trucks.

"We will also make promptly and pay for all necessary repairs on all equipment and tools furnished.

"For the above the Arkansas Highway Commission shall pay us as a rental the sum of $500 per calendar day, rental to start when above equipment arrives on the job.

"The Commission may reserve and have the right at its option to take over said equipment, or any other equipment furnished for the work, at a price represented by the difference in its agreed value, plus six per cent. interest for the period used, less the amount of rental paid to the date of exercising said option.

"In case the Commission desires us to furnish additional equipment on the work, we will do so at an agreed rental, or the commission may furnish such additional equipment as it may desire.

"We agree to furnish the Commission a list of all equipment furnished with the type, capacity and condition set out with an agreed appraisal of value set out for each unit furnished.

"We further agree to furnish all necessary labor and materials to manufacture, transport and lay the asphalt paving mixture at actual cost to us, plus fifteen per cent.

"Original invoices, freight bills and payroll sheets shall determine the labor and material costs.

"Figuring on the above basis, we guarantee the cost of Amiesite paving mixture per ton laid on the road will not exceed $11.94.

"Should the work be delayed by bad weather, or other conditions, and if, in the opinion of the Commission or its chief engineer, the rental set out, together with the cost of materials and labor, will exceed our estimate of $11.94 per ton for paving mixture in place, they can pay said rental, including labor, materials, repairs, fuel and freights, in an amount equal to $11.94 per ton for the asphalt paving mixture actually laid as full compensation to us.

"For any labor, or materials, or work that the Commission may desire or require in addition to the unloading of materials, manufacture, transport and laying the asphalt paving mixture, we will furnish same for actual cost, plus fifteen per cent.

"Payment for equipment rental, labor and materials furnished shall be due and payable on or about March 1, 1931, and monthly or semi-monthly thereafter."

A like acceptance was made to this form of contract.

To this complaint appellants interposed a general demurrer, which was overruled by the court. They declined to plead further, and a decree was entered enjoining them from issuing and paying warrants on vouchers issued by the commission pursuant to such contracts which were not advertised as required by law and which involved the payment by the State of more than $1,000, and which were not let on competitive bidding, ·or were based on a unit price or on a cost plus basis. This appeal followed.

The complaint alleges, and the demurrer admits, that during the years 1930, 1931 and 1932 the Commission entered into purported contracts with various persons not named to build and repair certain State highways on a basis of cost to the State at unit prices, and also entered into purported contracts with various persons not named for the same purpose on a rental and a cost plus basis, in which the cost of laying the paving mixture should not exceed a certain amount per ton; that said purported contracts were not signed or executed by the Commission as required by law, but in its name by its chairman only; that neither of said proposals or purported contracts was advertised as required by law, or at all, and that neither was let on competitive bidding, and that each called for payment by the State of more than $1,000. It was further alleged that vouchers had been issued by the Commission to such contractors in payment of amounts alleged to be due thereunder which are in excess of the cost of the material, labor and rental value of equipment.

Appellants seek to reverse the judgment on the ground that the Commission has and had the power and authority to enter into the contracts referred to in the complaint, such power and authority being expressly conferred or necessarily implied. On the other hand, the State, by her Attorney General, contends that such

contracts are null and void, not merely voidable, for these reasons: 1st, that they were not advertised as required by law; 2d, that they were not let on competitive bids to the lowest responsible bidder; 3d, that they were not signed and executed as required by law by three members of the Commission and attested by the secretary; and, 4th, that the vouchers issued on such contracts are in excess of cost of labor and material and of rental value of equipment. Three excellent and persuasive briefs have been filed by counsel, *amici curiae,* who seek a reversal and dismissal of the judgment principally on the ground that there is a defect of necessary parties defendant—the holders of vouchers issued by the Commission, of more than 3,000 in number of vouchers, it is stated—and on the further ground that the Commission had the power it assumed to exercise and properly exercised it, and that, even though the contracts mentioned be held void, the contractors should not be precluded from setting up whatever rights they may have based on *quantum meruit.*

The only question presented by this appeal, the only one urged by appellants, and the only one we do decide, is the validity of the contracts mentioned in the bill of complaint. We now proceed to a determination of that question.

The latest act of the Legislature prescribing the general duties and limiting the powers of the Commission is act 65, Acts 1929, p. 264, entitled "An Act to Amend and Codify the Laws Relating to State Highways." Section 18 thereof makes it the duty of the Commission to begin as soon as practicable and continue the maintenance of State highways, and so far as practicable do so according to what is known as the "Patrol System," and to employ such laborers and use such equipment and materials as may be necessary. "The Commission may make all necessary contracts, purchase all necessary equipments, supplies and materials and employ all necessary labor, and is hereby given all other necessary powers to provide for maintenance, and shall pay for

same out of the State Highway Fund. Provided, however, that all contracts so let in excess of $1,000, so made by said Commission, shall be let on a competitive basis, and to the lowest responsible bidder; provided, the Commission may reject all bids, and provided further that all bids shall be sealed bids and shall be filed with the Commission in open session and opened and tabulated during the said session of the Commission. No such contract shall be valid unless signed by at least three members of the Commission and attested by the secretary." This section refers to maintenance of State Highways.

Section 21 of said act relates to new construction and is as follows: "All new construction work shall be done by contract, and all contracts for such work shall be let to the lowest responsible bidder. The Commission shall have the right to reject any or all bids. No contract in excess of $1,000 shall be let without advertising for bids. Successful bidders shall be required to furnish a surety bond by a surety company to be approved by the Commission, in a penal sum of at least one-fourth of the amount of the contract price, conditioned as the Commission may require. The Commission may, however, accept personal bonds, but in every case in which a personal bond is accepted the contractor shall be required to deposit United States Government bonds or notes or valid bonds of any road improvement district referred to in § 19 of this act, in an amount equal to twenty-five per cent. of the amount of the contract, to be held in escrow as collateral security for the performance of the contract.

"The Commission may let contracts for the construction of necessary bridges on the State highways, to be paid for out of the State Highway Fund. It may make contributions to other bridges which it deems necessary on the State highway that may be constructed by bridge districts.

"Provided that where the Commission is of the unanimous opinion that any particular piece of work

may be done more economically with State forces, the Commission may proceed to do said particular construction work with State forces."

Other sections, notably 53, of said act confer broad powers on the Commission, but none of them change, limit, modify or alter the provisions of §§ 18 and 21 relative to the limitations on the powers of the Commission to contract in the matter of construction, reconstruction and maintenance of State roads. Analyzing these sections, 18 and 21, we find the following limitations on the powers of the Commission: § 18, relating to contracts for maintenance of State roads, plainly provides first, that any contract made for maintenance in excess of $1,000 "shall be let on a competitive basis, and to the lowest responsible bidder," in the manner therein provided; and, second, that "no such contract shall be valid unless signed by at least three members of the Commission and attested by the secretary." Section 21, relating to new construction, plainly provides, first, that: "All new construction work shall be done by contract," and, second, that: "all contracts for such work shall be let to the lowest responsible bidder," and, third, that "no contract in excess of $1,000 shall be let without advertising for bids." At the end of that section it is provided "that where the Commission is of the unanimous opinion that any particular piece of work may be done more economically with State forces, the Commission may proceed to do that particular piece of work with State forces." Whether this proviso relates to the paragraph of said section immediately preceding it authorizing the Commission to let contracts for the construction of necessary bridges on State highways, or whether it relates to all new construction work mentioned in the first line of said section, we think it unnecessary to decide, as we are of the opinion that the contracts mentioned in the complaint cannot, with any reasonable stretch of the imagination, be said to have been performed with "State forces." We think doing the work by "State forces" means the use of labor in the employ

of the State, under supervisors and engineers of the State, with State equipment and materials. It cannot reasonably be said that when a contractor is doing the work with his own men, equipment and materials, whether in maintenance or new construction, and either upon a unit price basis, a cost plus basis, or a rental basis with a maximum unit cost, the work is being done with "State forces."

The limitations on the power of the Commission to contract above set out in §§ 18 and 21 are too plain to admit of construction. The same power that created the Commission and gave it such broad and comprehensive powers, including the power to spend millions of dollars, thought it wise to provide these safeguards. They are plain, unambiguous and mandatory, not directory merely, and were not complied with. 44 C. J. 324, 25 R. C. L. 394. As said by this court in *Woodruff* v. *Berry*, 40 Ark. 251: "The entire authority of the board to let such contract is conferred by statute, and the statute prescribes how only they can contract. Any other contract is unauthorized, in excess of the powers vested in the board and voidable at the election of the State."

The Constitution provides that "any citizen of any county, city or town may institute suit in behalf of himself and all others interested, to protect the inhabitants thereof against the inforcement of any illegal exactions whatever." Article 16, § 13, Constitution 1874. We perceive no valid reason why the Attorney General may not maintain this action against the Auditor and Treasurer to prevent them from issuing and paying warrants on illegal exactions made against the State without the necessity of joining the beneficiaries of such exactions. As suggested by counsel as *amici curiae,* the holders of such vouchers are numerous. It would be difficult if not impossible to locate them all in this State, and many suits of a similar nature have been sustained by this court without joining the beneficiaries of the illegal exaction. *Belote* v. *Coffman,* 117 Ark. 352, 175 S. W. 37, is a fair sample of such cases. There a taxpayer brought suit

to enjoin the issuance of warrants upon an appropriation made by the General Assembly to pay the expense incurred by numerous persons in exhibiting resources of the State at the Panama Pacific Exposition in San Francisco in 1915. The injunction was denied by the chancery court which was reversed by this court and remanded with directions to grant the writ. Another case in point is *Farrell* v. *Oliver,* 146 Ark. 599, 226 S. W. 529. This was another taxpayer's suit to enjoin the Auditor from issuing warrants to pay for the maintenance of the Boys' and Girls' Industrial School. The injunction was denied by the chancery court, but was reversed by this court and remanded with directions to grant the writ. Many other cases might be cited to the same effect that neither the holders of the vouchers, the contractors, nor the Commission were necessary parties in determining whether appellants should be enjoined from the payment of illegal exactions.

It is argued that there may be contractors who, by reason of having furnished labor and materials to the Commission in the construction and repair of roads under these contracts, who have certain special defenses or rights to recover, even though the contracts may be void. We are not undertaking to adjudicate any such rights in this opinion. We have, however, reached the conclusion that the contracts set out in the complaint are void, and that the vouchers issued by the Commission pursuant thereto constitute illegal exactions, for the reason that such contracts were not made in compliance with the statutes heretofore mentioned.

The judgment of the chancery court in so holding is correct, and must be affirmed. It is so ordered.