## FORREST CITY *v.* ORGILL.

Opinion delivered September 28, 1908.

MUNICIPAL CORPORATIONS—UNAUTHORIZED CONTRACT—ESTOPPEL.—Although a purchase by municipal officers of machinery for waterworks which was not authorized by ordinance, resolution or order of the city council wherein the yeas and nays were called and recorded, and which was not ratified by any formal action of the city council, is not binding upon the city, the city cannot retain such machinery, which could have been purchased for it in proper manner, and at the same time defeat a recovery for the price thereof.

Appeal from St. Francis Circuit Court; *Hance N. Hutton,* Judge; affirmed.

*R. J. Williams,* for appellant.

1. No one was ever authorized by ordinance to make this contract on behalf of the city, and it is not bound. Kirby's Digest, § 5473; 40 Ark. 105; 61 Ark. 597.

2. Appellees having failed to make good the guaranty that the machinery would perform certain work would not be entitled to recover.

*John Gatling,* for appellee.

1. Municipal corporations can contract through their duly authorized agents. Fussell as chairman of the water plant had full control of it, and he had authority, as appears in the testimony, to purchase the machinery. So long as he was acting within the scope of his delegated authority, he had the right to purchase this property, which was essential to the public welfare. 34 Ark. 246; 38 Ill. 266; 82 Ill. 259; 77 N. C. 460. If there had been no proper grant of authority to make the contract, yet the city, in having received the property, continued to use it and to derive the benefit from such use, has made of it an executed contract, and is bound by it. 10 Wall. 684; 102 U. S. 299.

2. If there was a guaranty and a breach of it, the city has waived it. "If any act be done by the buyer which he would have no right to do unless he were the owner, that is an acceptance." Benjamin on Sales, § 703; 2 Mechem on Sales, 1811; 115 Ala. 356.

HILL, C. J. This is a suit by Orgill Bros. & Company against Forrest City for the purchase price of machinery for wa-

terworks. It was brought February 26, 1907, and resulted in favor of the plaintiff in September, 1907, and the defendant appealed.

Gorman was mayor, and Fussell chairman of the committee on waterworks of the common council of Forrest City. Acting on behalf of said city, as they supposed with authority, they purchased machinery for waterworks from Orgill Bros. & Company at the price of $1,642.90, f. o. b. Memphis. The machinery was to be installed by the city, and was received in October, 1905, and after some delay was installed at a cost of five or six hundred dollars, Fussell paying therefor and the city refunding to him the amount he expended. There is some difference as to the terms of the contract, which was made between Mr. Jones, representing the machinery company, and Mr. Gorman and Mr. Fussell on behalf of the city; Mr. Gorman and Mr. Fussell saying that they called for machinery which would pump three wells, which the city then had, and two others which it contemplated putting in; and Mr. Jones represented that this machine which he was offering them would do so, and that they could take it and try it for thirty days (Mr. Gorman thought it was sixty days) before they paid for it. Mr. Jones says that he represented that it would pump 100,000 gallons in ten hours, and that the city was to have thirty days to try it. The machine did not work satisfactorily to the city, and negotiations were entered into for a larger machine; and on December 27th, which was probably within the thirty days, the mayor wrote to Orgill Bros. & Company, asking on what terms they would substitute a larger compressor for the one they were then trying, and called their attention to the fact that they had expended something over $500 in installing the machine, and they did not feel called upon to pay any additional expense of experimenting with some other machine, but would consider their proposition when submitted in writing; he said that the machine would be disconnected and the use of it discontinued at any time the company requested it done, and that they, the city, were thoroughly satisfied that it would not do the work for which it was purchased. Mr. Gorman says that in this letter he offered to return it, and also in a conversation with Mr. Jones he offered to return it. The company insisted that the machinery was all right, and, if properly installed and used, would do the required work. Negotiations continued between the par-

ties for several months. Experts examined the machinery and the installation, but could not discover the trouble, but it was not filling the reservoir as rapidly as was expected and required for the uses of the city; whether due to the machinery, the installation, the location of the wells, or improper handling, is not made clear.

Mr. Fussell was asked why they did not disconnect the machinery and discontinue its use when they found it was not working satisfactorily. He says, because they did not want to leave the town without water, and they had spent six months and $150 trying to get information as to what the trouble was, and that they had no place to store it. When Mr. Gorman was asked why they did not send it back when they found it did not work satisfactorily, he said: "We had a machine up there that cost $750 with the tank, and we were running it in connection with this, and the two supplied the town. Now, we didn't want to set this aside and buy another, with the probability of having to pay for this one too."

The city used the machine from the time it was installed, and was continuing to use it when this case was tried. It was used in connection with other machinery, and this machinery pumped about half of the water in the reservoir which supplied the city, and the city was collecting water rates, and the receipts from the waterworks were monthly turned into the city treasury during all the time that this machinery was being used.

This contract was not authorized by any ordinance, resolution or order of the city council wherein the yeas and nays were called and recorded, as required by section 5473 of Kirby's Digest, nor was it ratified by any formal action of the city council. The contract was therefore void. *Cutler* v. *Russellville*, 40 Ark. 105.

A different principle prevails, however, where a contract, which is within the power of the municipality to make, is made without authority, but passes from an executory state, as it was in *Cutler* v. *Russellville*, *supra*, to an executed one, where the benefit is retained by the municipality. Then it is held that the municipality cannot retain the property which might properly have been purchased for it in proper manner and defeat a recovery for the price thereof, or recover back the price if paid.

*Frick* v. *Brinkley,* 61 Ark. 397; *Springfield Furniture Co.* v. *School Dist.,* 67 Ark. 236; *Book* v. *Polk,* 81 Ark. 244; *Texarkana* v. *Friedell,* 82 Ark. 531; *School Dist.* v. *Goodwin,* 81 Ark. 143; *Luxora* v. *Jonesboro, L. C. & E. Rd. Co.,* 83 Ark. 275.

In *Texarkana* v. *Friedell, supra,* it was said: "A municipal corporation may ratify the unauthorized acts of its agents or officers which are within the scope of the corporate powers, but not otherwise. * * * In order to have ratification, there must be some affirmative action by the proper officers, or some negative action, which of itself would amount to an approval of the matter in question."

Under the undisputed facts in this case, the city retained the machinery, which supplied in part the water it was daily using, and from which it was monthly collecting revenue. From November, 1905, to February, 1907, when this suit was brought, it continued to use the machinery, and was so continuing to use it when the case was tried, in September, 1907, a period of almost two years. Under the authorities heretofore cited, the city must be held to have ratified the purchase of the machinery and waived its insufficiency, if in fact the unsatisfactory workings of the water plant were due to any fault in the machinery. Mr. Benjamin thus states the principle which governs: "When goods are sent to a buyer in performance of the vendor's contract, the buyer is not precluded from objecting to them by merely receiving them; for receipt is one thing and acceptance another. But receipt will become acceptance if the right of rejection is not exercised within a reasonable time, or if any act be done by the buyer which he would have no right to do unless he were the owner of the goods." Benjamin on Sales, 703.

As to whether the machinery was at fault, or whether it was due to the installation or the improper use of the machinery, or to several other causes mentioned in the testimony, is not important. The city could, if in fact the machinery was not up to its representations, have discontinued the use of it, and then it would have been at liberty to have availed itself of its remedies, which are pointed out in *Ward Furn. Mfg. Co.* v. *Isbell,* 81 Ark. 549. It did not do so, but retained it for such a length of time that its acceptance must be presumed, for it did not exercise its right of rejection within a reasonable time; and moreover, it

acted toward the machinery in a way that it had no right to act unless it were the owner—that is, kept it in daily use. It has reaped the benefit, and now must pay the price.

Judgment affirmed.

Mr. Justice HART dissents.