Richard Weiss, Director Arkansas Department of Finance and Administration 1509 West Seventh Street, Suite 401 Post Office Box 3278 Little Rock, Arkansas 72203-3278
Dear Mr. Weiss:
I am writing in response to your request for my opinion on the following questions regarding the submission of bids by out-of-state motor vehicle dealers in response to solicitations for motor vehicle purchases for the State of Arkansas:
 1) May out-of-state motor vehicle dealers (those not registered in Arkansas) submit bids in response to solicitations for motor vehicle purchases for the State of Arkansas?
 2) If so, may such dealers be awarded contracts?
 3) Does the Office of State Procurement (OSP) have the legal authority to either refuse bids from or refuse to award contracts to such out-of-state motor vehicle dealers?
 4) Is OSP required to either refuse bids from or refuse to award contracts to such dealers?
RESPONSE
In response to question one, it is my opinion that out-of-state motor vehicle dealers not licensed to do business in Arkansas may not bid on state contracts for the purchase of motor vehicles. I will note in this regard that the state of Arkansas permits out-of-state dealers to become "licensed" by obtaining a temporary permit *Page 2 
to do business in this state pursuant to a system of license reciprocity. If an out-of-state dealer obtains such a permit, then, in my opinion, there is nothing to prevent the dealer from bidding on a contract. In response to question two, it is my opinion that no unlicensed dealer, regardless of state residency, may be awarded a state contract for the purchase of motor vehicles. That said, if the dealer in question obtains a license to do business in Arkansas, as explained in response to question one, then, in my opinion, said dealer may bid for and ultimately be awarded the contract. In response to question three, it is my opinion that the OSP has both the legal authority and the obligation to refuse bids from and refuse to award contracts to unlicensed out-of-state dealers. However, with regard to out-of-state dealers who have received permits pursuant to A.C.A. § 23-112-312, I have found no legal authority that permits OSP to refuse to accept bids or award contracts in this area on the basis of state residency. In fact, as set forth in greater detail below, such action might well raise constitutional concerns. In response to question four, it is my opinion that OSP is required to refuse bids from and refuse to award contracts to unlicensed motor vehicle dealers regardless of their state of residency.
Question 1: May out-of-state motor vehicle dealers (those notregistered in Arkansas) submit bids in response to solicitations formotor vehicle purchases for the State of Arkansas?
It is my opinion that out-of-state motor vehicle dealers not licensed to do business in Arkansas may not bid on state contracts for the purchase of motor vehicles.[1] The General Assembly has determined that the regulation and licensure of those engaged in most aspects of the motor vehicle business is necessary for a number of reasons including: prevention of fraud and unfair practices, prevention of false and misleading advertising, and promotion of the public safety and welfare. A.C.A. § 23-112-102(b)(l)(6) (8). Accordingly, Arkansas law states that a person without a license to do business in this state may not:
 "engage in business as, or serve in the capacity of, or act as a new motor vehicle dealer, motor vehicle sales person, motor vehicle lessor, manufacturer, importer, distributor, factory branch or division, distributor branch or division, factory representative, distributor representative, second-stage manufacturer, or converter, *Page 3 
as such, in Arkansas . . . regardless of whether or not the person maintains or has a place of business in Arkansas[.]"
Act 756 of 2009, to be codified at 23-112-301(a)(2).[2]
Moreover, Arkansas law provides that:
 "Motor vehicle dealer" means a person that is:
 (a) Engaged in the business of selling, offering to sell, soliciting, or advertising the sale of servicing or repairing motor vehicles under a manufacturers warranty; and
 (b) Located at an established and permanent place of business under a franchise, sales and service agreement, or a bona fide contract with a manufacturer or distributor.
Act 756 of 2009, to be codified at 23-112-103 (19)(a)(i).
Based on these provisions, I believe that a person bidding on a contract to supply new motor vehicles to the state could fairly be described as engaging in business as, serving in the capacity of, or acting as a new motor vehicle dealer. For this reason, I conclude that under A.C.A. § 23-112-301, as amended by Act 756 of 2009, an out-of-state motor vehicle dealer may not bid on a state contract for the purchase of motor vehicles unless said dealer is licensed by the state of Arkansas. I will note in this regard that A.C.A. § 23-112-312
permits out-of-state dealers to become "licensed" by obtaining a temporary permit to do business in this state pursuant to a system of license reciprocity. If an out-of-state dealer obtains such a permit, then it is my opinion that there is nothing to prevent the dealer from bidding on a contract.
Question 2: If so, may such dealers be awarded contracts?
Please see my response to question one. It is my opinion that, pursuant to A.C.A. § 23-112-301, as amended by Act 756 of 2009, no unlicensed dealer, regardless of state residency, may be awarded a state contract for the purchase of motor vehicles. Under that section, it is illegal for such a dealer to conduct business in *Page 4 
the state of Arkansas; and both the bidding and the resulting contract would, accordingly, be illegal. See Arkansas State Highway Commission v.Keaton, 187 Ark. 306, 59 S.W.2d481 (1933).[3]
That said, if the dealer in question obtains a permit pursuant to A.C.A. § 23-112-312, then it is my opinion that said dealer may bid for and ultimately be awarded the contract.
Question 3: Does the Office of State Procurement (OSP) have the legalauthority to either refuse bids from or refuse to award contracts tosuch out-of-state motor vehicle dealers?
In my opinion, for the reasons set forth in my responses to questions one and two, the OSP has both the legal authority and the obligation to refuse bids from and refuse to award contracts to unlicensed
out-of-state dealers.
However, with regard to out-of-state dealers who have received permits pursuant to A.C.A. § 23-112-312,1 have found no legal authority that permits OSP to refuse to accept bids or award contracts in this area on the basis of state residency. In fact, my research has uncovered no area where public agencies are authorized to absolutely refuse bids solely on the basis of the bidder's state of residence, although there are some circumstances where in-state bidders are given a bidding preference. See A.C.A. § 19-11-259 -304.
In fact, prior to 1993, public agencies were obligated to give a bidding preference on contracts for all "commodities" to "firms resident in Arkansas." However, in 1993, the General Assembly passed Act 263 which reduced the scope of the preference statute, A.C.A. § 19-11-259, by redefining "commodities" as "materials and equipment used in the construction of public works projects" for purposes of section 19-11-259
only. The rationale for this change was stated in the emergency clause of the act, found at section 5, which states:
 [T]his law, which was obviously enacted to benefit Arkansas businesses now appears to be having the opposite effect due to the fact that some states have reciprocated by penalizing Arkansas businesses which bid on public contracts for commodities in those *Page 5 
states, and some state agencies simply refuse to do business with Arkansas businesses because of the Arkansas preference law; and that it is in the overall best interest of Arkansas businesses that this preference be abolished as soon as possible.
Act 263 of 1993, section 5.
It is clear from this language that the General Assembly's intent in passing Act 263 of 1993 was to benefit Arkansas businesses by abolishing bidding preferences in all but very limited circumstances. In light of the fact that the General Assembly very expressly abolished mere preferences in this area, it is impossible for me to find that it intended to leave public agencies with the discretion to absolutely refuse the bids of out-of-staters.
Moreover, by refusing to take bids or award contracts on the basis of state residency, OSP could very likely run afoul of the United States Constitution. State procurement procedures do not generally implicate the Commerce Clause because the state is acting as a market participant in these instances. See Hughes v. Alexandria Scrap Metal, 426 U.S. 794
(1976). However, both the Privileges and Immunities Clause of Article IV[4] and the Equal Protection Clause[5] can serve to prevent a state from favoring its own citizens in market transactions without an adequate basis.
Under the applicable privileges and immunities analysis, a state may burden the protected "privilege" or "immunity" of an out-of-state citizen only where there is a "substantial reason" for the disparate treatment. See United Building Construction Trades Council v.Camden, 465 U.S. 208, 223 (1984). "As part of the justification offered for the discriminatory law, nonresidents must somehow be *Page 6 
shown to `constitute a peculiar source of the evil at which the statute is aimed.'" Id.
Turning to the Equal Protection Clause, the Supreme Court has stated:
 The Equal Protection Clause imposes limits upon a State's power to condition the right of a foreign corporation to do business within its borders . . . whatever the extent of a State's authority to exclude foreign corporations from doing business within its boundaries, that authority does not justify imposition of more onerous taxes or other burdens on foreign corporations than those imposed on domestic corporations, unless the discrimination between foreign and domestic corporations bears a rational relation to a legitimate state purpose.
Metropolitan Life Ins. Co. v. Ward, 470 U.S. 869, 876 (1985) (emphasis added) (internal citations omitted). Moreover, at least in the context of a discriminatory tax, the Court has held that "promotion of domestic business by discriminating against nonresident competitors is not a legitimate state purpose." Wat 882.
It is my opinion that OSP has both a "substantial reason" for and a "legitimate interest" in discriminating against unlicensed motor vehicle dealers from out-of-state. See A.C.A. § 23-112-102(b) 301(a)(2). However, it would be substantially more difficult to advance a proper reason for discriminating against out-of-state dealers who have taken advantage of the license reciprocity offered by A.C.A. § 23-112-312, especially since those dealers are licensed in their home state under requirements "substantially equivalent to the requirements in effect in this state." Id.
For these reasons, it is my opinion that OSP must refuse bids from unlicensed out-of-state dealers, but may not refuse bids from out-of-state dealers with a permit under A.C.A. § 23-112-312.
Question 4: Is OSP required to either refuse bids from or refuse toaward contracts to such dealers?
Please see my response to question three, above. In my opinion, OSP is required to refuse bids from and refuse to award contracts to unlicensed motor vehicle dealers regardless of their state of residency. *Page 7 
Assistant Attorney General Jennie Clingan prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN MCDANIEL Attorney General
[1] See discussion infra on licensing of out-of-state dealers through license reciprocity procedure set forth by A.C.A. § 23-112-312.
[2] Please note that Act 756 of 2009 contains an emergency clause at Section 25 making it effective on the date that it was approved by the Governor. Accordingly, Act 756 became law on April 1, 2009.
[3] In the cited case, recovery was permitted quantum meruit because only the form of the contract was improper and one party had already given value. However, the case does recognize that where a contract is truly against public policy, e.g., a contract with an entity not licensed to do business in the State, it is void.
[4] The Supreme Court has held that the concern with comity addressed by the Privileges and Immunities Clause "cuts across the market regulator-market participant distinction that is crucial under the Commerce Clause. It is discrimination against out-of-state residents on matters of fundamental concern which triggers the [Privileges and Immunities] Clause, not regulation affecting interstate commerce."United Building Construction Trades Council v. Camden, 465 U.S. 208,221 (1984)
[5] While the Commerce Clause is "integrally concerned with whether a state purpose implicates local or national interests[,] [t]he Equal Protection Clause, in contrast, is concerned with whether a state purpose is impermissibly discriminatory; whether the discrimination involves local or other interests is not central to the inquiry to be made. Thus, the fact that promotion of local industry is a legitimate state interest in the Commerce Clause context says nothing about its validity under equal protection analysis." Metropolitan Life Ins. Co. v.Ward, 470 U.S. 869, 879 (1985).